UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| MICHELLE FEATHERS STAGGS<br>SSN: XXX-XX-8838 | } } } } | BK Case No. 15-83431-CRJ-7 |
| Debtor(s) | } | Chapter 7 |
| WESTLAKE FLOORING COMPANY, LLC<br>d/b/a WESTLAKE FLOORING SERVICES<br>     Plaintiff/Counterclaim Defendant<br>v.<br>MICHELLE FEATHERS STAGGS<br>     Defendant/Third-Party Plaintiff | } } } } } } } } } } | AP Case No. 16-80042-CRJ-7 |

**MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR LACK OF JURISDICTION**

This Adversary Proceeding is before the Court on Motion to Dismiss Defendant's Counterclaim filed by Westlake Flooring Company, LLC, d/b/a Westlake Flooring Services (hereinafter "Westlake Flooring") for lack of subject matter jurisdiction and lack of standing.

The Court has reviewed the Defendant's Counterclaim against Westlake Flooring; the Motion to Dismiss Defendant's Counterclaim and Brief in Support of Motion to Dismiss Defendant's Counterclaim; Defendant's Memorandum in Support of Allowing Counterclaim against Westlake Flooring Company, LLC to Continue if Westlake is Allowed to Pursue Claims against Debtor, Individually; the Response to Defendant's Memorandum, and related documents. For the reasons set forth below, the Court finds that the Motion to Dismiss Defendant's Counterclaim should be denied.

1

# FACTS AND PROCEDURAL HISTORY[1]

1. The Defendant, Michelle Staggs, is the sole member and president of a used car dealership located in Madison County, Alabama known as Alabama Direct Auto, LLC ("Alabama Direct").

2. Prepetition, Alabama Direct entered into a Floor Plan Agreement with Westlake Flooring which the Defendant personally and individually guaranteed.

3. Alabama Direct also entered into a Dealer Agreement for Franchised & Non-Franchised Dealers with Westlake Services, LLC d/b/a Westlake Financial Services, LLC (hereinafter Westlake Financial") pursuant to which Westlake Financial provided financing for vehicles sold by Alabama Direct.

4. On November 19, 2015, Westlake Flooring filed suit in the Circuit Court of Madison County, Alabama against Alabama Direct seeking prejudgment seizure of forty vehicles. On December 16, 2015, the Circuit Court of Madison County granted Westlake Flooring's Motion for Prejudgment Seizure. Westlake proceeded to seize the vehicles which were the subject of its Writ, but asserts that only half of the vehicles were recovered.

5. On December 21, 2015, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On Schedule A/B of her petition, the Defendant scheduled as an asset a claim for fraud and breach of contract against "Westlake Financial" in the amount of $2,000,000.

6. On January 7, 2016, Alabama Direct also filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 16-80042-CRJ-7.

---

[1] To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such.

7. On March 3, 2016, the Defendant's Chapter 7 Trustee filed a Report of No Distribution, reporting after diligent inquiry into the financial affairs of the Defendant that there was no property available for distribution from the estate over and above that exempted by law. Accordingly, on June 2, 2016, the Court entered an Order of Discharge granting the Defendant's Chapter 7 discharge.

8. On May 27, 2016, Westlake Flooring filed a Complaint against the Defendant to Determine Dischargeability of Obligations pursuant to 11 U.S.C. § 523 alleging that the Defendant sold or allowed to be sold vehicles which were subject to the floor plan security interest of Westlake Flooring without remitting payment and that the Defendant illegally retained the payment and proceeds from the sale of vehicles.

9. The Complaint included three Counts for relief for willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), fraud and defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4), and false pretenses, false representation, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

10. On July 8, 2016, the Defendant filed a Counterclaim against Westlake Flooring and a Third-Party Complaint against Westlake Financial asserting claims for breach of contract, fraud, and violation of the Alabama Deceptive Trade Practices Act. The Defendant alleges that: (1) Westlake Financial and Westlake Flooring acted in concert with one another and breached their agreements with the Defendant and Alabama Direct by wrongfully forcing Alabama Direct to buy back certain vehicles, delaying funding and payments, wrongfully freezing money based on alleged title issues, charging interest on vehicles allegedly funded when Westlake Flooring did not have titles to the vehicles; (2) Westlake Services and Westlake Flooring fraudulently worked in concert with one

another to force the Defendant and Alabama Direct out of business by wrongfully requiring buy-backs, continuing to accept payments from customers on financing contracts that had been repurchased by Alabama Direct by fraudulently delaying funding and payments, by wrongfully freezing money on alleged title issues, and by charging interest on vehicles being "floor planned" for which they had not yet expended money to purchase and for which they had not yet acquired a title; and (3) Westlake Financial and Westlake Flooring violated the Alabama Deceptive Trade Practices Act by working in concert with one another to put the Defendant and Alabama Direct out of business.

11. On July 22, 2016, Westlake Financial filed a Motion to Dismiss Defendant's Third-Party Complaint and Westlake Flooring filed a Motion to Dismiss Defendant's Counterclaim.

12. On September 8, 2016, the Court entered an Order: (1) granting Westlake Financial's Motion to Dismiss Third-Party Complaint; (2) directing the Defendant to file a Response to Westlake Flooring's Motion to Dismiss; and (3) directing the Plaintiff to file an Amended Complaint to address concerns regarding whether the allegations in the Complaint required Westlake Flooring to pierce the corporate veil of Alabama Direct.

13. On October 10, 2016, the Plaintiff filed an Amended and Restated Complaint to Determine Dischargeability of Obligations pursuant to 11 U.S.C. § 523 in which the Plaintiff further asserts that the Defendant was fully and solely in control of all the financial affairs of Alabama Direct; that she actively participated in the conversion of Westlake Flooring's property; and that she caused or permitted Alabama Direct to sell floor planned vehicles and then not remit payment of the proceeds to Westlake Flooring.

## CONCLUSIONS OF LAW[2]

1. "Federal district courts exercise jurisdiction over civil proceedings that arise under the Bankruptcy Code, title 11 of the United States Code, pursuant to 28 U.S.C. § 1334(b), which holds, in pertinent part, that: '. . . the district courts shall have original but not exclusive jurisdiction of all proceedings arising under title 11 or arising in or related to cases under title 11.'"[3]

2. "Although Congress granted the district courts jurisdiction over all civil proceedings that arise under the Bankruptcy Code, it provided that a district court could refer such proceedings to the bankruptcy judges for the district" pursuant to 28 U.S.C. § 157(a).[4] Thus, bankruptcy courts have jurisdiction over 'civil proceedings arising under title 11, or arising in or related to cases under title 11.'"[5] For bankruptcy jurisdiction to exist, a case must at a minimum "relate to" a case under title 11.[6]

3. "'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code" whereas 'arising in' proceedings are "generally thought to involve administrative-type matters, [or] matters that could only arise in bankruptcy."[7] The allegations in the Defendant's Counterclaim for breach of contract, fraud, and violations under the Alabama Deceptive Trade Practices Act do not invoke a substantive right

---

[2] To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

[3] *Welt v. MJO Holding Corp. (In re Happy Hocker Pawn Shop, Inc.)*, 212 Fed. Appx. 811, 816 (11th Cir. 2006).

[4] *Id.*

[5] *Winchester Global Trust Co. v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. Appx. 963, 966 (11th Cir. 2008).

[6] *Community Bank of Homestead v. Boone (In re Boone)*, 52 F.3d 958, 960 (11th Cir. 1995).

[7] *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999).

5

created by the Bankruptcy Code, nor do they involve the type of administrative matters that could only arise in bankruptcy.

4. Accordingly, for this Court to have jurisdiction over the Defendant's Counterclaim, the claim must be "related to" a case under title 11. "A dispute is 'related to' a case under title 11 when its result 'could conceivably' have an 'effect on the estate being administered in bankruptcy.'"[8]

5. The case of *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir. 1990), is the Eleventh Circuit's seminal case on the scope of "related to" bankruptcy jurisdiction. In *Lemco*, the Eleventh Circuit adopted the test enunciated by the Third Circuit in the case of *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984) for determining "related to" jurisdiction, writing:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action either positively or negatively and which in any way impacts upon the handling and administration of the bankruptcy estate.[9]

6. The issue before the Eleventh Circuit in *Lemco* was whether the bankruptcy court could retain jurisdiction to control the disposition of the debtor's property after the final sale of the property in a Chapter 7 proceeding. Applying the *Pacor* test, the Court of Appeals held that a dispute between the debtor's landlord and the purchaser of estate assets was not "related to" the bankruptcy case for purposes of subject matter jurisdiction because

---

[8] *Winchester Global Trust Co. v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. Appx. 963, 966 (11th Cir. 2008)(quoting *Miller v. Kemira,, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)).
[9] *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990).

6

any proceeds recovered by the landlord would not benefit the bankruptcy estate. There must be "some nexus between the related civil proceeding and the Title 11 case" for subject matter jurisdiction to exist.[10] Once the Sale Order became final, the property left the estate free of all claims in bankruptcy, and resolution of the dispute between third parties would not affect creditors. Accordingly, the Eleventh Circuit concluded that there was "no reason for the bankruptcy court's jurisdiction to linger."[11]

7. The Eleventh Circuit determined that the nexus between a bankruptcy case and civil a proceeding contemplated by *Lemco* was present, however, in the case of *Winchester Global Trust Co. v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. Appx. 963 (11th Cir. 2008). A dispute between non-debtor entities over the ownership of business records related to property sold as part of a debtor's bankruptcy estate "related to" the administration of the debtor's estate. A "proceeding need not necessarily be against the debtor or the debtor's property" if the proceeding could affect the administration of the bankruptcy estate.[12] The Eleventh Circuit explained that the "key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad."[13]

8. However, courts have explained that "related to" bankruptcy jurisdiction is not as broad in no asset Chapter 7 cases.[14] In the case of *Community Bank of Homestead v. Boone (In*

---

[10] *Id.* at 787.

[11] *Id.* at 789.

[12] *Winchester Global Trust Co. v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. Appx. 963, 966 (11th Cir. 2008).

[13] *Id.*

[14] *See In re Shepard*, 2008 WL 78772864 (Bankr. N.D. Ga. 2008)(denying Motion to Reopen Case where *pro se* Chapter 7 debtor sought to prosecute claims abandoned by the Trustee for alleged fraudulent activities perpetrated by mortgage companies).

7

*re Boone)*, 52 F.3d 958 (11th Cir. 1995), the Eleventh Circuit held that the Chapter 7 debtors' postpetition claim for intentional interference with the sale of their house fell outside the broad sweep of § 1334(b)'s related-to jurisdiction where any damages would belong solely to the debtors. Because the debtors were not seeking to reorganize under Chapter 13 or Chapter 11 under which bankruptcy jurisdiction may be broader, any recovery in their Chapter 7 liquidation would not affect their compliance with a reorganization plan. Accordingly, the bankruptcy court had no jurisdiction over the debtors' claim for tortious interference with the contract to sell their home.

9. "Related to" jurisdiction generally does not exist in no asset Chapter 7 cases if the proceeding will not alter the debtor's rights in a way that impacts the bankruptcy estate.[15]

10. In the case of *Newkirk v. Wasden (In re Bray)*, 288 B.R. 305 (Bankr. S.D. Ga. 2001), the bankruptcy court determined that subject matter jurisdiction did not exist in a proceeding filed post-discharge by a third-party seeking to assert ownership over property abandoned by the Chapter 7 Trustee. The bankruptcy court dismissed the complaint, and explained:

> Where an asset has been abandoned by the Trustee, that asset is no longer part of the bankruptcy estate. As a result, the property reverts back to its pre-bankruptcy status, and that asset is properly removed from the jurisdiction of the bankruptcy court. . . . Although determining which party owns title to these goods could alter Debtors' rights, it will not do so in a way that impacts the estate.[16]

---

[15] *In re E.C. Morris,* 523 B.R. 77 (6th Cir. BAP 2014)(pending prepetition state court lawsuits against non-debtor appellants for successor liability would have no impact on the fully administered bankruptcy estate after the Chapter 7 Trustee filed a No Asset Report); *Johnston v. Middletown (In re Johnston)*, 484 B.R. 698 (Bankr. S.D. Ohio 2012)(bankruptcy court did not have related to jurisdiction over Chapter 7 debtor's complaint seeking a determination that he was not a "responsible person" liable for unpaid trust fund taxes because the determination would not affect property of the estate nor the distribution to creditors); *Barnhart v. DeMarco (In re DeMarco)*, 454 B.R. 343 (Bankr. E.D. Pa. 2011)(finding related to jurisdiction did not exist where the bankruptcy court denied the Chapter 7 debtor's discharge); *Liburd v. Nationstar Mortgage, LLC (In re Liburd)*, 434 B.R. 863 (Bankr. N.D. Ill. 2010)(finding lack of subject matter jurisdiction over state law claims for fraud and conspiracy after Chapter 7 debtor received her Chapter 7 discharge); *VonGrabe v. Mecs (In re VonGrabe)*, 332 B.R. 40 (Bankr. M.D. Fla. 2005)(finding bankruptcy court could not exercise related to jurisdiction over prepetition cause of action abandoned by the Chapter 7 Trustee).

11. Although it is generally accepted that a bankruptcy court is divested of related to jurisdiction upon entry of a report of no distribution, courts have recognized a limited exception to this general rule in dischargeability actions. In the case of *Reed v. Zwick (In re Reed)*, 559 B.R. 194 (Bankr. N.D. Ohio 2016), the bankruptcy court exercised related to jurisdiction over the Chapter 7 debtors' state law fraud and conscionability claims contesting whether they owed student loan debts. The Chapter 7 debtors filed a complaint against a student loan creditor pursuant to 11 U.S.C. § 523(a)(8) seeking a determination of undue hardship. The debtors also included two counts in the complaint alleging that the student loans were obtained by actual fraud and that the student loans were unconscionable as a result of their fraudulent origins. After the Chapter 7 Trustee filed a report of no distribution and the bankruptcy court granted the debtors' discharge, the defendant sought to dismiss any counts unrelated to 11 U.S.C. § 523(a)(8), arguing that the debtors' state law defenses to the validity of the student loan debts would not have any effect on the administration of the no asset Chapter 7 estate. The bankruptcy court determined that it had subject matter jurisdiction over all counts of the complaint, including the state law claims of fraud and unconscionability. The bankruptcy court wrote:

> The Court's determination of the extent of Debtors' debt to Navient is 'integral to the restructuring of debtor-creditor relations, *see Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 59 109 S. Ct. 2782, 106 L. Ed.2d 26 (1989), at the very least, Debtors' Counts Two and Three have significantly more than just a 'tenuous connection' to the estate, in the language of *Dow Corning*[.]
>
> The Debtors here assert 'disallowance claims challeng[ing] the validity of debts that [the creditor] has sought to enforce.' *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012). Notwithstanding the fact that there is a state-law

---

[16] *Newkirk v. Wasden (In re Bray)*, 288 B.R. 305, 308 (Bankr. S.D. Ga. 2001).

9

basis for the alleged disallowance, the federal courts have jurisdiction over these claims. *Id.* Moreover, disallowance is directly related to dischargeability, the quest that is foremost in the Debtors' minds and a question over which the district court, and by reference the bankruptcy court, has clear jurisdiction. As observed by the Bankruptcy Appellate Panel of the Eighth Circuit in another case involving disallowance of a claim on unconscionability grounds, the 'bankruptcy court properly determined that [the creditor] had no [nondischargeability] action under Bankruptcy Code § 523 because the Debtor owes no debt to [the creditor] . . . . For § 523(a) to apply in the first instance, there must be a debt. *In re Walker: Wilson v. Walker,* 528 B.R. 418, 428 (8th Cir. BAP 2015).[17]

12. In the case before this Court, the Defendant argues that her Counterclaim is directly related to Westlake Flooring's nondischargeability action. In its Amended Complaint, Westlake Flooring seeks a determination that its claim against the Defendant in the amount of $152,480.95 is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(6), (a)(4) and (a)(2)(A). Westlake Flooring argues that the Defendant actively participated in the conversion of Westlake Flooring's property and that she caused or permitted Alabama Direct to sell floor planned vehicles and then not remit payment of the proceeds to Westlake Flooring.

13. The Defendant counters that Westlake Flooring was not paying for the vehicles as they were sold by Alabama Direct and, hence, no money was being held "in trust." The Defendant argues that Westlake Flooring breached the agreement to provide floor plan funding to Alabama Direct, made fraudulent misrepresentations, and violated the Alabama Deceptive Trade Practices Act.

14. Although the Defendant included a request for damages in her Counterclaim against the Plaintiff, the Court finds that there is a sufficient nexus between the Defendant's Counterclaim and the nondischargeability action to the extent the Defendant challenges the validity of the underlying debt. The Court must first determine whether a debt exists

---

[17]  *Reed v. Zwick (In re Reed)*, 559 B.R. 194, 201 (Bankr. N.D. Ohio 2016).

10

before the Court is able to determine whether such debt should be excepted from discharge. Accordingly, the Court has "related to" subject matter jurisdiction over the Defendant's Counterclaim.

15. The Court further finds that the Defendant has standing to bring the Counterclaim. Although Westlake Flooring argues that the Counterclaim is property of Alabama Direct's bankruptcy case and that Alabama Direct's Trustee is the real party in interest with standing to assert the Counterclaim, the Court finds that the Defendant has standing to assert the Counterclaim in defense of Westlake Flooring's nondischargeability action.

16. Finally, Westlake Flooring argues that the Counterclaim fails to comply with Rule 7009(b) of the Federal Rules of Bankruptcy Procedure which incorporates Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) reads as follows:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.[18]

17. Westlake Flooring asserts that the fraud claim is based on speculation and conclusory statements and should, therefore, be dismissed or struck. Rather than dismissing the Defendant's fraud claim, the Court finds that the Defendant should file an Amended Counterclaim setting forth the allegations of fraud with particularity in compliance with Rule 9(b) and will provide a deadline for filing the Amended Counterclaim in the corresponding Order entered with this Memorandum Opinion.

---

[18] FED. R. CIV. P. 9(b).

11

## CONCLUSION

The Court finds that it has subject matter jurisdiction over the Defendant's Counterclaim under 28 U.S.C. § 1334(b). The Court has "related to" jurisdiction over the Defendant's Counterclaim and the Defendant has standing to pursue the Counterclaim as the determination of the extent of the Defendant's liability is integral to the restructuring of the Defendant's debtor-creditor relationship with Westlake Flooring. The Court will enter a separate Order Denying Motion to Dismiss in conformity with this Memorandum Opinion.

Dated this the 13th day of December, 2016.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge